*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* P. E. SCOTT, Minor.

UNPUBLISHED
September 14, 2023

No. 365082
Wayne Circuit Court
Family Division
LC No. 20-000162-NA

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Respondent-father, E. Scott, appeals as of right the trial court's order terminating his parental rights to the minor child, PES, under MCL 712A.19b(3)(b)(*ii*), (i), (j), and (k)(*iii*). For the reasons set forth below, we affirm.

## I. INTRODUCTION

Respondent and his long-time partner, G. Alexander, have four children together: RS, MS, PS, and PES. The trial court previously terminated respondent's and Alexander's rights to the three oldest children in 2021 because of severe physical abuse and environmental neglect, and the court also terminated Alexander's rights to three other children from a prior relationship, MA1, MA2, and MA3. Only respondent's parental rights to PES are at issue in this appeal.

Respondent and Alexander both appealed the 2021 order terminating their parental rights to the other children. While their appeals were pending, Alexander gave birth to respondent's daughter, PES, in 2022. Children's Protective Services ("CPS") instituted a safety plan whereby PES initially was placed with relatives, but when that arrangement did not work out, the child was placed in the home of J. Alston, who was considered fictive kin. On September 29, 2022, this Court affirmed the trial court's 2021 order terminating respondent's and Alexander's parental rights to their other children. *In re Abdullah/Scott,* unpublished per curiam opinion of the Court of Appeals, issued September 29, 2022 (Docket Nos. 359783 and 359784). Shortly thereafter, the Department of Health and Human Services ("DHHS") filed a petition requesting that the court also exercise jurisdiction over PES and terminate respondent's and Alexander's parental rights to that child at the initial disposition. In November 2022, respondent was sentenced to prison terms of 6 ½ to 10 years each for two convictions of second-degree child abuse, MCL 750.136b(3),

-1-

arising from his abuse of the other children.[1] Following a hearing in February 2023, the trial court found PES came within its jurisdiction, held that statutory grounds to terminate respondent's parental rights to PES were established by clear and convincing evidence, and found that termination of respondent's parental rights to PES was in the child's best interests. Respondent now appeals.

## II. ANALYSIS

### A. STATUTORY GROUNDS

Respondent challenges the trial court's findings regarding the existence of statutory grounds for termination. After reviewing the record, we find no merit to respondent's arguments.

In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

The trial court terminated respondent's parental rights to PES under MCL 712A.19b(3)(b)(*ii*), (i), (j), and (k)(*iii*). These statutory provisions permit termination of parental rights under the following circumstances:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> * * *
>
> (*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.
>
> * * *
>
> (i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

---

[1] Alexander was also convicted of two counts of second-degree child abuse and one count of torture, MCL 750.85. In November 2022, the court sentenced her to prison terms of 6 ½ to 10 years for each of the child abuse convictions and 17 to 30 years for the torture conviction.

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

(k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

* * *

(*iii*) Battering, torture, or other severe physical abuse.

The trial court did not clearly err by terminating respondent's parental rights under these grounds.

The evidence established that in 2021, respondent lost his parental rights to three other children because of severe physical abuse and environmental neglect. At the 2021 termination hearing, DHHS presented evidence of severe physical abuse and neglect perpetrated by both respondent and Alexander. As this Court observed in *In re Abdullah/Scott,* unpub op at 3, there was "overwhelming evidence" that respondent "physically and emotionally abused and tortured [Alexander's six-year-old child, MA3,] by binding [the child's] wrists and ankles with zip ties, leaving him diapered in a trailer, and beating him with a stick and belt." The evidence further established that respondent committed this physical abuse in front of his own two children. *Id.* In addition to the physical abuse, there was evidence that respondent permitted some of his children "to live in complete and utter squalor in a trailer that lacked basic necessities, including electricity and running water" and that "[t]wo of the children were forced to urinate and defecate either outside or in a bucket." *Id.* As a result of these events, in addition to the child protective proceedings, respondent was convicted of two counts of second-degree child abuse.

During the termination hearing, the court took judicial notice of the file, specifically, the prior termination proceeding. In addition, a CPS investigator testified that before respondent's incarceration, he was invited to attend a Team Decision Meeting held shortly after PES's birth to discuss plans for the newborn's care. Although respondent appeared for the meeting, he left early. The worker also testified that she made several attempts to communicate with respondent while he was in custody at various facilities. Respondent did not respond to the caseworker's efforts. Further, there was no evidence that respondent had participated in any voluntary services during his incarceration.

Considering the foregoing evidence, the trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*ii*), (i), (j), and (k)(*iii*). The evidence established that respondent had a history of physically and emotionally abusing PES's siblings and half-siblings, that he lost parental rights to three other children because of that conduct, and that he was criminally convicted of child abuse. Accordingly, the trial court reasonably concluded that respondent had not rectified the conditions that led to the prior termination of his parental rights and that PES would be harmed if returned to respondent's home and care.

Despite this conclusion, respondent argues that the trial court should have more closely scrutinized the prior termination of his parental rights. However, respondent has provided no authority for the proposition that one trial court is required to review the efficacy of another trial court's order. Indeed, that review falls within the purview of the appellate courts. See MCR 3.993(A)(4).

In a related argument, respondent asserts that it was improper for the trial court to rely on the prior termination of his parental rights because he was pursuing an appeal of that termination order. Similarly, he asserts that the court should not have considered his criminal convictions because those were also under appeal. Initially, we note that respondent—and apparently the other parties and the trial court—seemed oblivious to the fact that at the time the petition was filed on October 4, 2022, this Court had already affirmed the termination of respondent's parental rights to his three older children in *In re Abdullah/Scott*, unpub op (Docket Nos. 359783 and 359784), which was decided on September 29, 2022. Further, there is no indication in this Court's docketing system that respondent has appealed his criminal convictions, and respondent has not identified any pending appeal. Thus, the factual predicates for this argument are missing.

Even if, as suggested, appeals were pending at the time of termination, we would still reject respondent's arguments. Respondent seems to suggest that it was improper for the court to rely on the 2021 termination order because, until the appeal process was exhausted, that order was not valid and enforceable. However, respondent does not provide any legal authority for this position, and his reasoning is contrary to the rules governing terminations of parental rights and the related appellate process. MCR 3.993 governs, among other things, appeals in child protective proceedings. See MCR 3.993 and MCR 3.901(B). MCR 3.993(C)(1) provides that appeals from the family division of the circuit court are governed by chapter 7 of the Michigan Court Rules. In this regard, MCR 7.209(A)(1) provides, "an appeal does not stay the effect or enforceability of a judgment or order of a trial court unless the trial court or the Court of Appeals otherwise orders." There were no orders staying proceedings in the earlier child protective proceedings. Further, MCL 600.1041 provides that the "pendency of an appeal from the family division of circuit court in a matter involving the disposition of a juvenile . . . shall not suspend the order unless the court to which the appeal is taken specifically orders the suspension." This Court did not suspend the trial court's order terminating respondent's parental rights to his other children. Indeed, this Court affirmed the earlier order before the petition involving PES was filed. Respondent's arguments related to the trial court's consideration of his prior termination of parental rights and criminal convictions are legally and factually without merit.

Respondent also makes a cursory argument that DHHS failed to make reasonable efforts toward reunification. However, because respondent's parental rights to PES's siblings had been involuntarily terminated, and there was no evidence that he had rectified the conditions that led to this prior termination of his parental rights, reasonable efforts were not required. See MCL 712A.19a(2)(c).

Finally, respondent argues that there was no evidence that he would harm PES or that he was unfit to parent this child. Respondent completely ignores the evidence that he physically and emotionally abused PES's siblings and half-siblings, that he had his rights to those children terminated, and that he was convicted of second-degree child abuse arising from his abuse of the children. This evidence supports the trial court's finding that there was clear and convincing

evidence that PES would be at risk of similar harm in respondent's care, and that respondent was unfit to parent any child.

## B. BEST INTERESTS

Respondent also challenges the trial court's finding that termination of his parental rights was in PES's best interests. We find no error in this regard.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). When considering whether termination of parental rights is in a child's best interests, a court may consider a variety of factors. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). These factors include the bond between the child and the parent, the parent's ability to parent the child, the child's need for permanency and stability, the advantages of a foster home over the parent's home, the parent's compliance with the case service plan, the parent's visitation history with the child, the child's well-being, and the possibility of adoption. *Id.* at 713-714. In addition, the trial court should consider the child's safety and well-being, including the risk of harm a child might face if returned to the parent's care. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011). The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. The court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *Id.* at 90. This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones*, 286 Mich App at 129.

CPS removed PES from respondent's care at birth. Initially, the child was placed with a relative, and then when that arrangement did not work out, she was moved to the home of J. Alston, a family friend considered to be fictive kin. PES was approximately six months old at the time the court terminated respondent's parental rights. Because she had been in Alston's care almost her entire life, the Alston home was the only home PES had ever really known. There was testimony that PES was doing well in Alston's care and that all her needs were being met. Further, the caseworker testified that a bond existed between PES and her foster mother, and that Alston wished to adopt PES should respondent's parental rights be terminated.

By contrast, at the time of termination, respondent was incarcerated and serving sentences of 6½ to 10 years' imprisonment. He would not be in a position to parent his child for several years. Even if respondent were not confined to prison, it would not have been in PES's best interests to be returned to his care considering the overwhelming evidence that PES would be at risk of harm if placed with respondent.

The court also considered that PES was placed with fictive kin, and concluded that this was tantamount to being placed with a relative.[2]  The trial court acknowledged that PES's placement with a "relative" would favor reunification, but it went on to properly balance relative placement with other relevant factors.  Even though placement with a relative weighs against termination, and such a placement must be considered, a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests. *In re Olive/Metts*, 297 Mich App 35, 43; 823 NW2d 144 (2012).  Here, PES was extremely young and required permanence and stability to foster her continued growth and development.  The court further noted that a future relationship with respondent was not in PES's best interests and that anything other than termination of parental rights would not fully protect PES in the future.  The court properly balanced relevant factors and it did not clearly err by finding that termination of respondent's parental rights was in PES's best interests, despite her relative placement.

Affirmed.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel

---

[2] MCL 712A.13a(1)(j) was amended by 2022 PA 200, effective October 7, 2022, to include within the definition of "relative" individuals who are "[n]ot related to a child within the fifth degree by blood, marriage, or adoption but who has a strong positive emotional tie or role in . . . the child's parent's life if the child is an infant, as determined by the [DHHS]."  This new definition would likely include Alston.